UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BROWN JORDAN COMPANY, )
)
Plaintiff, )
)
v. )
)
JEAN SCHULZ, )
)
Defendant. )
)

JUDGE BATTS

07 CIV 5857

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES

RECEIVED
JUN 2 0 2007
U.S.D.C. S.D. N.Y.
CASHIERS

For its Complaint against Defendant Jean Schulz ("Schulz"), Plaintiff Brown Jordan Company ("Brown Jordan"), by undersigned counsel, hereby alleges, on information and belief, as follows:

## NATURE OF THE ACTION

1. This is an action by Plaintiff Brown Jordan to recover a binder containing a unique list of customers and prospective customers (the "Client Binder") that was taken from Brown Jordan's showroom in New York City by a former employee, Jean Schulz, and to stop Schulz from using for her own advantage Brown Jordan's confidential customer information.

2. Brown Jordan is a designer, manufacturer, and marketer of luxury retail and contract outdoor furniture. Brown Jordan has nine showrooms located throughout the United States, including one located at 150 East 58th Street in New York, New York (the "New York Showroom"). From May 24, 2004 until April 30, 2007, Jean Schulz was the Manager of Brown Jordan's New York Showroom. On April 30, 2007, Brown Jordan terminated Ms. Schulz's employment as Showroom Manager in New York for various reasons, including a dispute over a pay increase and poor performance reviews.

3. On June 6, 2007, Jean Schulz entered the premises of the New York Showroom, walked into an office closet, and removed the Client Binder. She then left the showroom, taking

the binder with her. The Client Binder is property that belongs exclusively to Brown Jordan, and it contains Brown Jordan's trade secrets -- including customer information drawn from Brown Jordan's computerized customer database.

4. Schulz's conduct was a direct and willful breach of the terms of her employment at Brown Jordan. Schulz had previously agreed that any documents containing information obtained from her employment with Brown Jordan were the "sole and exclusive property of the Company." When she walked out of the New York Showroom, she violated this promise that she made to Brown Jordan. Since June 6, 2007, Schulz has refused to return the Client Binder to Brown Jordan, despite repeated requests that she do so.

5. Schulz's conduct has caused and is continuing to cause irreparable harm to Brown Jordan. In order to protect Brown Jordan's trade secrets from misappropriation, to enforce Brown Jordan's contractual rights, and to prevent the damage caused by Schulz from continuing, Brown Jordan seeks an injunction (a) requiring Schulz to return both the original Client Binder and any copies made thereof, and (b) barring Schulz from soliciting business from Brown Jordan clients and from otherwise using Brown Jordan confidential client information.

## JURISDICTION

6. This is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

7. This Court has original subject matter jurisdiction over this proceeding pursuant to Title 28, United States Code, Section 1332(a)(1), based on diversity of citizenship of the parties.

8. This Court has personal jurisdiction over the Defendant because Defendant resides and may be found in New York.

9. Venue is proper in this District pursuant to Title 28, United States Code, Section 1391(a), in that Defendant resides in this District.

## THE PARTIES

10. Plaintiff Brown Jordan is a Delaware Corporation with offices in El Monte, California and Birmingham, Alabama. It is a subsidiary of Brown Jordan International, Inc. ("BJI"), which is a Florida corporation headquartered in St. Augustine, Florida. Brown Jordan designs, manufactures and markets luxury retail and contract outdoor furniture.

11. Jean Schulz is an individual who resides in New York, New York. She is a former employee of Brown Jordan.

## FACTUAL BACKGROUND

**A. Brown Jordan's History and Its New York Showroom**

12. Since 1945, Brown Jordan has designed luxury outdoor and patio furniture. Brown Jordan was the first company to create furniture for full-time outdoor use. Founded by Robert Brown and Hubert Jordan, Brown Jordan has won 17 Design Excellence awards, more than any other manufacturer in the outdoor industry. As a result of this long history of success, Brown Jordan has developed an unparalleled reputation and has become one of the most recognized names in luxury leisure furnishings.

13. Brown Jordan sells its furniture to a variety of interior designers and architects through its nine showrooms located across the United States, including its New York Showroom. In the recent past, the New York Showroom has been responsible for approximately $1.9 million in annual revenues. The New York Showroom is located in the Architect and Designer Building at 150 East 58th Street in Manhattan. This building is occupied by many businesses that are in the interior design and architecture trades. After entering the New York Showroom from the

elevator, there is a desk area on the right side with two computers at which employees work while they are not showing products to customers. The desk is set off from the rest of the showroom by a chest-high counter and it can only be accessed through a narrow gap between the counter and the wall. A small kitchen area is set into the wall behind the desks. Next to the kitchen area are two small closests, one of which is where the Client Binder was stored.

**B.   Schulz and Shepherd Create the Client Binder While Working at Brown Jordan**

14.   On May 24, 2004, Jean Schulz was hired by Brown Jordan to serve as the manager of New York Showroom. In that capacity, she has met with many designers and architects and displayed to them the Brown Jordan lines of outdoor furniture. Schulz had worked as a salesperson for companies that sold products to interior designers for many years before joining Brown Jordan.

15.   In order to advance the business, Schulz and the assistant manager of the New York Showroom, Monica Shepherd, together created the Client Binder. The Client Binder tracked information about current clients and also identified individuals and companies that were potential customers. The Client Binder was assembled during business hours using Brown Jordan's office supplies; the Brown Jordan name was imprinted on the front, back and spine of the Client Binder. Significantly, Brown Jordan maintained a single, unique copy of the Client Binder.

16.   The Client Binder is arranged alphabetically, with each page containing the name and contact information of between 6 and 8 existing or prospective customers. The data was assembled from several sources, including Brown Jordan's computerized customer database, the business cards of individuals who visited the showroom, a commercial directory of design professionals, a list of designers assembled by the managers of the Architect and Designer

Building, and individuals with whom Shultz and/or Shepherd had worked in the past. The information drawn from the computerized customer database included contact information for the most active customers of Brown Jordan's New York Showroom. The Client Binder contains information about customers of the New York Showroom and does not include information about customers who do business with other Brown Jordan showrooms.

17. The Client Binder was developed over the nearly three years during which Schulz and Shepherd worked together for Brown Jordan, and it was frequently updated to reflect new information. The Client Binder was particularly useful each September, as Brown Jordan began marketing its new product offerings. Brown Jordan prepares a series of catalogs and other promotional materials each year, and Schulz and Shepherd used the Client Binder to keep track of which materials were mailed to each customer or prospective client. The Client Binder was also used to track the effectiveness of different promotional efforts because it helped Shepherd and Schulz monitor which mailings yielded new orders.

18. In short, the Client Binder is an irreplaceable tool for the New York Showroom, and because no other copies exist, Schulz's taking of this document will make it hard for the New York Showroom to conduct its business, particularly this coming September. The Client Binder would also be highly useful to other businesses in the design trade, as well as to an individual who wanted to work as a salesperson in the design industry.

C.   **Brown Jordan's Code of Conduct**

19. Brown Jordan values its relationships with customers, and its employees are instructed that it is important to maintain confidential information to further these relationships. In part to maintain the confidentiality of its customer information, Brown Jordan has a Code of Conduct and Business Ethics Policy ("Code of Conduct") with which its employees are expected

to comply. On March 23, 2005, Schulz executed a "certificate of agreement and compliance to the code of conduct and business ethics policy." In it, Schulz agreed "to comply with all of the requirements and restrictions" of the Code of Conduct, including Paragraph Seven, which explains Brown Jordan's policy with respect to its confidential and proprietary information.

20. Paragraph 7(I)(A) states that "no Company Representative shall, either during his/her employment with the Company or thereafter, disclose to any third party or use any confidential information, proprietary information or trade secret of the Company, or such information regarding third parties with whom the Company may, directly or indirectly, have an obligation of confidentiality, without the prior written consent of the Company." This provision prohibits Schulz from disclosing the confidential customer information contained in the Client Binder.

21. Paragraph 7(II)(A) states that "[a]ll inventions, improvements, developments, ideas and original works of authorship, whether or not patentable or copyrightable and whether or not fixed in any mode of expression or reduced to practice, that any Company Representative makes or conceives of, alone or jointly with others during such Company Representative's employment with the Company or which result from such Company Representative's employment with the Company (hereinafter collectively referred to as 'Proprietary Information') shall be the exclusive property of the Company, its successors, assigns, or nominees." The Client Binder was created during Schulz's employment at Brown Jordan, with the participation of Monica Shepherd, another Brown Jordan employee. The Client Binder was also prepared during company time and involved the expenditure of Brown Jordan's resources. It is therefore the exclusive property of Brown Jordan.

22.     Paragraph 7(II)(B) of the Code of Conduct further explains that "[e]ach Company Representative shall promptly and fully disclose to the Company any and all Proprietary Information made or conceived by such Company Representative during the period of his or her employment, and will assign to the Company or its nominee all such employee's right title and interest in and to such Proprietary Information[.]"  This provision excludes from its scope only that information created by an employee entirely on his or her own time and which does not relate to the business of the company or any work performed by the employee for the company. The Client Binder does not fall within this limited exception.

23.     Finally, Paragraph 7(II)(D) of the Code of Conduct provides that all documents of any kind "obtained from or pursuant to employment with the Company, are the sole exclusive property of the Company" and explains that "[u]pon termination of a Company Representative's employment with the Company, or as requested by the Company prior thereto, each Company Representative shall return all such items obtained during the course of his/her employment, including all copies thereof and all work product derived therefrom."  Schulz, therefore, was prohibited from taking the Client Binder and maintaining it in her possession after she left Brown Jordan.

**D.   Five Weeks After Brown Jordan Fires Schulz, Schulz Takes The Client Binder From The New York Showroom**

24.     On April 30, 2007, Brown Jordan decided to terminate Schulz's employment as Showroom Manager.  Her termination letter identified multiple reasons for this decision.  It stated that her performance reviews were below an acceptable level and commented that she presided over a sales decline in New York.  It criticized her work during a showroom renovation and took her to task for not following the instructions of her supervisors.  Finally, it explained

that she attempted to modify a document in order to make it appear as if Brown Jordan intended to give her a 3% pay raise when Brown Jordan had decided to offer her no raise.

25. On June 6, 2007, Schulz and another individual, Tom Edwards ("Edwards"), entered the New York Showroom. Edwards is a designer who had previously visited the New York Showroom. Schulz went directly to the closet in which the Client Binder was stored. Monica Shepherd, who was then acting showroom manager, saw Schulz rummaging through the closet. Schulz told Shepherd that she wanted to take a file of hers with her. When Shepherd saw that Schulz had the Client Binder in her hands, Shepherd told her that it should not be removed from the showroom. Nonetheless, Schulz left the showroom with the Client Binder. While Schulz was in the process of taking the Client Binder, Edwards asked Shepherd to show him some Brown Jordan furniture. Edwards left a few minutes later without having purchased anything.

26. Since Schulz took the Client Binder without authorization, Brown Jordan has taken several steps to try to recover the Client Binder. On June 6, just a few hours after Schulz took the binder, Patricia Zavala, a human resources manager for Brown Jordan, called Schulz to ask that she return the Client Binder. In a very short phone conversation, Schulz refused, insisting that the Client Binder belonged to her because it was something that she created while working at Brown Jordan, and she then hung up the phone. That same day, Brown Jordan employees notified the New York City Police Department and made a police report against Schulz for stealing the Client Binder.

27. On June 15, Schulz received a letter by overnight mail from Brown Jordan's attorneys at Jenner & Block LLP asking Schulz to return the Client Binder and not to use the information in it to compete against Brown Jordan. Schulz declined to accept service of another

copy of the same letter, sent by hand later in the day. As of the filing of this Complaint, there was no response from Schulz to this letter, and the Client Binder has not been returned.

## COUNT I

### MISAPPROPRIATION OF TRADE SECRETS

28. Plaintiff incorporates the allegations of paragraphs 1-27 of this Complaint as if set forth herein.

29. The Client Binder contains confidential business information belonging to Brown Jordan, including its customer list for the New York Showroom, and this customer information amounts to a trade secret.

30. Schulz used improper means to misappropriate the trade secrets contained in the Client Binder when she took the Client Binder out of the New York Showroom without authorization.

31. Schulz's misappropriation of Brown Jordan's trade secrets was willful and in breach of contract.

32. As a result of the misappropriation of trade secrets, Brown Jordan's business has been irreparably harmed, including the loss of the value of the confidential and proprietary information contained in the Client Binder.

## COUNT II

### BREACH OF CONTRACT

33. Plaintiff incorporates the allegations of paragraphs 1-32 of this Complaint as if set forth herein.

34. On March 23, 2005, Schulz signed an agreement promising to abide by the Code of Conduct, which prohibits Schulz from disclosing to others confidential and proprietary

information belonging to Brown Jordan, like the information contained in the Client Binder. The Code of Conduct also prohibits Schulz from retaining documents containing information obtained from Brown Jordan after the termination of employment.

35. The non-disclosure provisions of the Code of Conduct, to which Schulz agreed to abide, are necessary to protect Brown Jordan's legitimate protectable interests in its confidential information and in its customer relationships.

36. Schulz's unauthorized taking of the Client Binder is a breach of contract that has caused, and will continue to cause, irreparable harm and injury to Brown Jordan, for which Brown Jordan has no adequate remedy at law.

37. Brown Jordan is substantially likely to prevail on the merits of its request for a preliminary or permanent injunction, or both.

38. Brown Jordan has additionally suffered and will suffer damages due to Schulz's breach of contract.

## COUNT III

### CONVERSION

39. Plaintiff incorporates the allegations of paragraphs 1-38 of this Complaint as if set forth herein.

40. Schulz converted Brown Jordan's Client Binder, which contained confidential and proprietary information and had been in the New York Showroom prior to Schulz taking it on June 6, 2007.

41. Schulz converted the Client Binder when she exercised an unauthorized dominion over the Client Binder to the exclusion of Brown Jordan's rights, as there is no existing copy of the Client Binder within Brown Jordan's possession.

42. As a result of Schulz's conversion of the Client Binder, Schulz has caused and will continue to cause, irreparable harm and injury to Brown Jordan, for which Brown Jordan has no adequate remedy at law.

43. Brown Jordan is substantially likely to prevail on the merits of its request for a preliminary or permanent injunction, or both.

44. Brown Jordan has additionally suffered and will suffer damages due to Schulz's conversion of the Client Binder.

## PRAYER FOR RELIEF

WHEREFORE, Brown Jordan respectfully requests that this Court grant the following relief:

A. Temporarily, preliminarily, and permanently enjoining Jean Schulz from using trade secrets belonging to Brown Jordan and from violating the Code of Conduct, including by retaining or using the Client Binder, which contains Brown Jordan confidential information and trade secrets, or contacting or soliciting Brown Jordan customers;

B. Ordering Jean Schulz to pay Brown Jordan damages in an amount to be determined at trial to compensate it for the loss of any customers as a result of her unlawful conduct;

C. Granting Brown Jordan its reasonable fees and costs, including attorneys' fees; and

D.  Any such other and further relief as this Court deems necessary and just.

Dated: June 20, 2007

Respectfully Submitted,

JENNER & BLOCK LLP

By: _____
Harry Sandick (HS-2955)
Matthew Alsdorf (MA-4741)
919 Third Avenue, 37th Floor
New York, New York 10022
(212) 891-1600

*Attorneys for Plaintiff Brown Jordan Company*